UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VENTURA ASSOCIATES, INC.,

    Plaintiff,

- against -

INTERNATIONAL OUTSOURCING
SERVICES, INC.,

    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/14/08

**OPINION AND ORDER**

04 Civ. 5962 (PKL)
04 Civ. 10250 (PKL)

**Appearances**

BADIAK & WILL, LLP
Patrick J. Corbett, Esq.
106 Third Street
Mineola, New York 11501

Attorneys for Plaintiff

COSTELLO, SHEA & GAFFNEY LLP
Steven E. Garry, Esq.
44 Wall Street
New York, New York 10005

Attorneys for Defendant

**LEISURE, District Judge:**

This case involves an alleged breach of contract arising from defendant's failure to distribute promotional debit cards. Plaintiff, Ventura Associates, Inc. ("Ventura"), and defendant, International Outsourcing Services, Inc. ("IOS"), entered into an oral agreement whereby IOS would distribute 5,000 promotional debit cards. IOS only distributed 137, but claims that one of Ventura's employees at the time -- Janice Chandhok -- instructed IOS to stop distributing the cards because they were defective. Ms. Chandhok flatly denies ever giving such an instruction. Both parties now move for summary judgment. IOS maintains that Ms. Chandhok's deposition testimony must be stricken and that Ventura cannot prove any damages flowing from the alleged breach of contract, whereas Ventura argues that Ms. Chandhok's testimony establishes its claim as a matter of law and that damages are readily ascertainable. For the reasons set forth below, each party's motion is DENIED.

## Background

The following overview is derived from the submissions of the parties, and unless otherwise noted, shall constitute the facts not in dispute.[1]

---

[1] Ventura submitted a statement of undisputed material facts pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York. These facts are deemed admitted for purposes of Ventura's motion because IOS does not dispute them. See Local Rule 56.1(c).

1

Ventura is engaged in the administration of sweepstakes, games, and contests for its clients. (Pl.'s 56.1 ¶ 1.) In October 2001, Ventura contracted with one of its clients, Masterfoods USA ("Masterfoods"), to administer a promotion. (Id. ¶ 2; Manhart Aff. Ex. A.) Specifically, Ventura was to design and operate an instant-win game for Whiskas Cat Food, a product made by Masterfoods's subsidiary, Kal Kan Foods, Inc. (Pl.'s 56.1 ¶ 2.) To that end, Ventura set up a sweepstakes in which the second prize was a "$25 debit card for the purchase of gasoline at selected gas stations." (Manhart Aff. ¶ 9, Ex. C.) Masterfoods purchased 5,000 of these debit cards from a vendor, The Properties Group ("TPG"), for $138,170.00. (Id. ¶ 12, Ex. D.) Thereafter, Ventura orally contracted with IOS,[2] which was instructed to distribute the debit cards to the winners of the sweepstakes after September 9, 2002. (Pl.'s 56.1 ¶¶ 5, 8.)

One year later, following an inventory inspection, IOS informed Ventura that it had debit cards related to the Whiskas Cat Food sweepstakes in storage. (Pl.'s 56.1 ¶ 10; Manhart Aff. ¶ 15, Ex. E.) Lisa Manhart, Ventura's Executive Vice President, Sales and Marketing, informed Masterfoods that its promotion had not been fulfilled:

---

[2] Ventura's first legal argument is that there was a valid oral contract between Ventura and IOS because the terms of the agreement were to be performed within one year of the formation of the contract. (Pl.'s Memo. of Law at 10.) Ventura is correct, see N.Y. Gen. Obligations Law § 5-701(a)(1), and as such, IOS does not dispute the enforceability of the contract.

2

> We discovered this unfortunate oversight
> when [IOS] notified us that they were
> holding inventory, including approximately
> 4,863 "gift cards" located in their locked
> storage area. When we inquired further, we
> learned that the gift cards were WHISKAS®
> gas cards that should have been fulfilled by
> [IOS] as unclaimed prizes in a Second Chance
> Drawing. The Instant Win Prize Claims had
> been fulfilled, but these Second Chance
> prizes apparently had not been awarded.
> Since the promotion ended over one year ago,
> we assumed until this discovery, that all
> prizes had been awarded in accordance with
> the Official Rules of the Sweepstakes. The
> undistributed gas cards remain in a locked
> area at [IOS], but I have been told that
> they have expired.

(Manhart Aff. ¶ 17, Ex. F; see also Def.'s Memo. of Law, Ex. D1.) In response, Masterfoods sought reimbursement from Ventura for $131,787.30, the prorated amount Masterfoods paid for the remaining 4,863 cards (Pl.'s 56.1 ¶ 12; Manhart Aff. ¶ 18, Ex. G.) Masterfoods was ultimately reimbursed in full, (Pl.'s 56.1 ¶ 15; Pl.'s Ex. E at 69), with $106,787.30 paid by Ventura's insurer and $25,000 paid by Ventura in the form of its deductible.[3]

Ventura notified IOS that IOS was liable for the loss. (Pl.'s 56.1 ¶ 14; Manhart Aff. ¶ 19, Ex. H.) IOS, in turn,

---

[3] IOS previously moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss this action based upon the Court's lack of subject matter jurisdiction, contending that Ventura could only recover $25,000, short of the $75,000 threshold required by 28 U.S.C. § 1332(a). Applying New York's collateral source rule, this Court held that "[t]he fact that Ventura chose to minimize its financial risk through insurance cannot serve to benefit IOS by reducing its potential liability to Ventura." Ventura Assocs., Inc. v. Int'l Outsourcing Servs., Inc., No. 04 Civ. 5962, 2005 U.S. Dist. LEXIS 13991, at *21 (S.D.N.Y. July 12, 2005) (Leisure, J.).

refused to pay Ventura because it claimed to have received instructions from Ms. Chandhok, who worked at Ventura under Ms. Manhart, (Pl.'s Ex. A at 8), that the debit cards were defective:

> Prior to picking and sending the Second Chance gas cards, Gail Ross was informed by Janice Chandhok, of your office, that the cards may be faulty. Namely that there was only $20.00 on the supposed $25.00 card. Ms. Ross was told not to send the remainder of the cards until notified by your office. No notification was ever forthcoming. . . . We are in no way responsible for the cards expiring and assume no liability for same.

(Def.'s Ex. H; see Def.'s Ex. F1.) Ms. Ross, a former employee of IOS, claims that after 137 debit cards were distributed, she received a phone call from Ms. Chandhok, who informed her that the cards "had a defect." (Def.'s Ex. F at 38-39, 44-45.) For her part, Ms. Chandhok denies ever instructing IOS to halt distribution of the cards or even knowing that the debit cards were defective. (Pl.'s Ex. A at 117.) Further, Ms. Manhart, whose purported responsibilities included monitoring for any defect in the debit cards, claims she never knew of such a defect and never instructed Ms. Chandhok to contact IOS in order to cease distribution of the cards. (Manhart Aff. ¶¶ 22, 24-25.) Similarly, Masterfoods' employees responsible for this promotion and the president of TPG never knew the debit cards to be defective. (Pl.'s Ex. C at 89-90; Pl.'s Ex. D at 87; Pl.'s Ex. E at 75, 77.)

4

IOS initially proceeded against Ventura in Texas state court on July 9, 2004, seeking declaratory judgment that it had not breached the oral agreement with Ventura. Ventura filed a complaint against IOS in the Southern District of New York on August 2, 2004. IOS's action, which Ventura removed to the Western District of Texas, was ultimately transferred to this District, see Int'l Outsourcing Servs., Inc. v. Ventura Assocs., Inc., No. EP-04-CA-353, 2004 U.S. Dist. LEXIS 27761 (W.D. Tex. Dec. 7, 2004), and accepted by this Court as a related case. Following this Court's denial of IOS's motion to dismiss, Ventura Assocs., Inc., 2005 U.S. Dist. LEXIS 13991, the parties engaged in discovery, and now bring their respective motions for summary judgment.

## Discussion

I. Ms. Chandhok's Deposition Testimony

IOS seeks to have Ms. Chandhok's entire deposition stricken, and without her testimony, claims that there exist no genuine issues of material fact. The request stems from a portion of Ms. Chandhok's deposition in which IOS's counsel asked the witness whether she had previously received a subpoena in this action. (Def.'s Memo. of Law, Ex. G at 16.) Ventura's counsel, Patrick J. Corbett, Esq., instructed Ms. Chandhok not to answer the question:

5

> I'm not going to permit her to answer any
> questions not related to the facts and
> circumstances surrounding the claim and the
> defenses. The issue of whether or not she
> was served with a subpoena and what she did
> in regard to that are irrelevant to the
> facts and circumstances surrounding the
> claim [and] the defenses.

(Id.) Mr. Corbett now asserts that he instructed Ms. Chandhok not to answer because she had previously failed to appear for her deposition, potentially subjecting her to civil penalties. Under Federal Rule of Civil Procedure 30(c)(2), "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2); see Am. Fun & Toy Creators, Inc. v. Gemmy Indus., Inc., No. 96 Civ. 0799, 1997 U.S. Dist. LEXIS 12419, at *26-27 (S.D.N.Y. Aug. 21, 1997). "Generally, absent a privilege, instructions not to answer questions at a deposition are improper." Am. Fun & Toy Creators, Inc., 1997 U.S. Dist. LEXIS 12419, at *27.

The Court need not examine the propriety of Mr. Corbett's instruction to Ms. Chandhok, however, because IOS's requested relief is patently unwarranted. IOS asks the Court to strike the entirety of Ms. Chandhok's testimony, the vast majority of which pertains to issues germane to the merits of this litigation, because she was instructed not to answer questions about a deposition subpoena. The proper recourse for this

6

alleged discovery violation would have been a motion to compel Ms. Chandhok's answers to the questions pursuant to Rule 37(a)(3)(B)(i). See, e.g., Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc., No. 96 Civ. 2064, 1997 U.S. Dist. LEXIS 1272, at *12-13, 16 (S.D.N.Y. Feb. 10, 1997) (Sweet, J.) (granting defendant's motion to compel deposition testimony where plaintiff's counsel instructed the deponent not to answer questions based upon relevance). If such a motion were granted, sanctions may have been imposed, at the Court's discretion, for the costs associated with re-deposing Ms. Chandhok. See Fed. R. Civ. P. 30(d)(2), 37; see, e.g., Sicurelli v. Jeneric/Pentron, Inc., 03 Civ. 4934, 2005 U.S. Dist. LEXIS 38943, at *27-28 (E.D.N.Y. Dec. 30, 2005) (ordering plaintiff's counsel to pay the costs, but not attorneys' fees, related to re-deposing certain witnesses).

IOS chose not to pursue these remedies. Instead, it now seeks, at the summary judgment stage, to strike Ms. Chandhok's entire deposition based upon her failure to answer questions that have an attenuated connection, at best, to the key facts in this action.[4] To the extent that the answers to these questions

---

[4] In this light, even if the Court had compelled Ms. Chandhok to answer the questions, it is unlikely that IOS would have been entitled to any sanctions, let alone the striking of the entire deposition. IOS points to no authority that has authorized such a harsh sanction where an attorney has instructed a deponent not to answer a question. Cf. Morales v. Zondo, Inc., 204 F.R.D. 50, 55, 58 (S.D.N.Y. 2001) (imposing monetary sanctions where counsel's

7

are of greater significance to IOS's case than the Court appreciates, IOS should have sought such information in good faith, rather than tactically waiting to use Ventura's alleged discovery violation as a means to dismiss the action. Accordingly, Ms. Chandhok's deposition testimony will not be stricken and will be considered in the Court's summary judgment ruling.

## II. Summary Judgment Standard

District courts are directed to issue summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 367-68 (2d Cir. 2003) (stating that a court may grant summary judgment "'only if it can be established that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'") (quoting Int'l Bus. Machs. Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 423 (2d Cir. 2002)). Of course, "'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

---

"interruptions were pervasive, and clearly intended to cause problems for [opposing counsel] in his examination").

8

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Opals on Ice Lingerie, 320 F.3d at 368 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986)). "A dispute is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" N.Y. Stock Exch., Inc. v. New York, N.Y. Hotel, LLC, 293 F.3d 550, 554 (2d Cir. 2002) (quoting Anderson, 477 U.S. at 248). The relevant substantive law will identify the facts that are material for the purposes of summary judgment.[5] Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, a district court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975) (Kaufman, C.J.) (citing Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); accord LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995) ("'The inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, interrogatory answers, and depositions must be viewed

---

[5] The Court will apply New York substantive law because this case arises under diversity jurisdiction, 28 U.S.C. § 1332(a)(1). See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 71-80 (1938).

9

in the light most favorable to the party opposing the motion.'" (quoting Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994))); Patrick v. LeFevre, 745 F.2d 153, 158 (2d Cir. 1984). If there exists "any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996).

III. Ventura's Motion for Summary Judgment

Ostensibly relying upon two arguments, Ventura contends that Ms. Chandhok's testimony establishes its breach-of-contract claim as a matter of law. First, Ventura states that "[i]f the Court finds both parties equally credible, and no substantiating witness is offered, the Court will conclude that no modification of the contract occurred." (Pl.'s Memo. of Law at 13.) This argument, which flies in the face of the well-established principle that credibility of witnesses is an issue to be decided by the trier of fact, is rejected.[6] See Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

---

[6] In support of its position, Ventura improperly relies upon an opinion by a small-claims court that followed the presentation of evidence at trial. After assessing the evidence, the judge there found that "whenever a court is required to determine the provisions of an oral agreement, not only is the credibility of the parties a factor, but also the availability of disinterested witnesses who could substantiate the parties' testimony." Bouchoueva v. Novoye Russkove Slovo Puyblishing Co., 4 Misc. 3d 1020A, 798 N.Y.S.2d 343 (N.Y. Civ. Ct. 2004).

10

facts are jury functions, not those of a judge . . . ."); Pennsylvania R.R. Co. v. Chamberlain, 288 U.S. 333, 338 (1933) ("[W]here there is a direct conflict of testimony upon a matter of fact, the question must be left to the jury to determine, without regard to the number of witnesses upon either side.").

Second, anticipating that IOS would argue that Ms. Chandhok's conversation with Ms. Ross served as an oral modification of the contract, Ventura claims that there was no consideration for such a modification. In its answer, however, IOS does not assert that there was an oral modification, but rather that Ventura "abandoned the agreement it alleges, or is otherwise equitably estopped from recovering the damages alleged." (Ans. ¶ 13.) Ventura's argument is thus inapplicable because "[n]either waiver nor estoppel rests upon consideration or agreement."[7] Nassau Trust Co. v. Montrose Concrete Prods. Corp., 56 N.Y.2d 175, 184, 436 N.E.2d 1265, 1269 (N.Y. 1982). Estoppel serves to protect the party, in the interest of fairness, "against whom enforcement is sought, and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought." Id. Waiver, on the other hand, focuses not on defendant's detriment, but on the actions

---

[7] Ventura's argument that IOS waived its oral-modification defense by failing to include it in its answer is also inapplicable.

11

of the plaintiff, namely whether there is a "voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable." Nassau Trust Co., 56 N.Y.2d at 184, 436 N.E.2d at 1269-70; see Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 585 (2d Cir. 2006) ("'The intent to waive is usually a question of fact . . . .'") (quoting Jefpaul Garage Corp. v. Presbyterian Hosp., 61 N.Y.2d 442, 448, 462 N.E.2d 1176, 1178-79 (N.Y. 1984)). Then-Judge Cardozo's analysis of waiver and estoppel is particularly enlightening:

> He who prevents a thing from being done may not avail himself of the non-performance which he has, himself, occasioned, for the law says to him, in effect; This is your own act, and, therefore, you are not damnified. The principle is fundamental and unquestioned. Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. We need not go into the question of the accuracy of the description. The truth is that we are facing a principle more nearly ultimate than either waiver or estoppel, one with roots in the yet larger principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong.

Imperator Realty Co., Inc. v. Tull, 228 N.Y. 447, 457, 127 N.E. 263, 266 (1920) (Cardozo, J., concurring) (internal quotation marks and citations omitted).

Here, Ventura's theory appears to be that IOS simply forgot to distribute the promotional debit cards and, realizing its mistake, fabricated an excuse in order to avoid liability.

12

There is certainly support for such a theory in the record, but IOS has raised a reasonable inference that it relied on the instructions of Ms. Chandhok when it ceased distribution of the cards. Indeed, IOS posits, "[w]hat economic sense would it have made for IOS to cease distribution of the majority of the gas cards when its compensation depended upon the number of cards distributed?" (Def.'s Opp. at 6.) These are issues of fact to be determined by a jury, who will assess the credibility of witnesses and weigh the evidence in determining whether Ventura waived its claim or is otherwise estopped from recovering from IOS. Accordingly, Ventura's motion for summary judgment is denied.

IV. IOS's Motion for Summary Judgment

IOS moves for summary judgment as to damages,[8] generally arguing that Ventura cannot prove any damages flowing from IOS's alleged breach of contract. In assessing damages, it is axiomatic that a party injured by a breach of contract must be placed in the same economic position it would have been in had the contract been fully performed. See Terwilliger v. Terwilliger, 206 F.3d 240, 248 (2d Cir. 2000) ("'Money damages are substitutional relief designed in theory to put the injured party in as good a position as he would have been put by full

---

[8] With Ms. Chandhok's deposition testimony permitted, IOS acknowledges that there exists a genuine issue of material fact. Thus, its motion for summary judgment as to liability is denied.

13

performance of the contract, at the least cost to the defendant and without charging him with harms that he had no sufficient reason to foresee when he made the contract.'") (quoting Freund v. Washington Square Press, Inc., 34 N.Y.2d 379, 382, 314 N.E.2d 419, 420-21 (N.Y. 1974)); Bausch & Lomb Inc. v. Bressler, 977 F.2d 720, 728-29 (2d Cir. 1992). Under New York law, while a plaintiff must prove the existence of damages with certainty in order to recover for breach of contract, plaintiff need not prove the amount of loss with certainty. See S & K Sales Co. v. Nike, Inc., 816 F.2d 843, 852 (2d Cir. 1987); Lexington Prods. Ltd. v. B.D. Commc'ns, Inc., 677 F.2d 251, 253 (2d Cir. 1982). Applying this principle in the summary judgment context, IOS can prevail on its motion only if Ventura has failed to raise a genuine issue of material fact as to the existence of alleged damages.

IOS's central argument in support of its motion for summary judgment is that Ventura's only potential recourse against IOS is in the form of lost profits, not the $131,787.30 paid to Masterfoods for the unused debit cards.[9] According to IOS, "Masterfoods/Kal Kan purchased the gas cards on a non-recourse basis, at a fixed cost regardless of whether some, all or none

---

[9] IOS goes on to argue in detail that Ventura cannot prove the loss of future profits with any reasonable certainty. At no point during this litigation, however, has Ventura sought any damages other than the value of the undistributed debit cards; therefore, IOS's analysis of Ventura's potential lost profits is immaterial.

14

of the cards was distributed. . . . Nothing that IOS did or failed to do in purported breach of its agreement with Ventura caused the loss of the amount claimed." (Def.'s Reply Memo. of Law at 3-4.) This argument ignores Masterfoods's outlay in reliance on the fulfillment of the Whiskas Cat Food promotion.

> As an alternative to [loss in value], the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed.

Restatement (Second) of Contracts § 349 (1981); see L. Albert & Son v. Armstrong Rubber Co., 178 F.2d 182, 189 (2d Cir. 1949) (Hand, J.) ("On principle therefore the proper solution would seem to be that the promisee may recover his outlay in preparation for the performance, subject to the privilege of the promisor to reduce it by as much as he can show that the promisee would have lost, if the contract had been performed.").

Masterfoods purchased 5,000 promotional debit cards worth a total of $138,170.00, presumably anticipating some measure of benefit from consumer exposure to the advertisement. When the debit cards were not distributed as planned, Masterfoods's investment in those cards was lost without the possibility of any consequent benefit. This loss was defrayed by Ventura, which relied upon IOS to distribute the debit cards in order to

15

fulfill its obligations to Masterfoods. Ventura has therefore adequately shown the existence of damages should a jury determine that IOS breached its obligation to distribute the debit cards. See Polyglycoat Corp. v. C.P.C. Distribs., Inc., 534 F. Supp. 200, 203 n.3 (S.D.N.Y. 1982) (Duffy, J.) (finding that plaintiffs would be entitled to "compensation for sums spent advertising their products in reliance upon the contracts" if breach of contract was found). Of course, IOS may argue at trial that Ventura is not entitled to the full value of the unused cards. See Bressler, 977 F.2d at 729 ("[A] reliance recovery will be offset by the amount of 'any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been fully performed.'") (quoting Restatement (Second) of Contracts § 349 (1979)). For example, IOS maintains "that a 10% to 20% non-usage of cards in connection with this type of promotion was normally anticipated." (Def.'s Reply Memo. of Law at 5-6, Ex. E at 50-51). The precise amount of damages necessary to place Ventura in the economic position it would have been in if IOS had fully performed its obligations must be determined by a jury. Accordingly, IOS's motion for summary judgment is denied.

16

## Conclusion

For the foregoing reasons, Ventura's and IOS's motions for summary judgment are DENIED. The parties are ORDERED to appear before this Court at 500 Pearl Street, Courtroom 18B for a status conference on June 10, 2008 at 10:30 a.m.

**SO ORDERED.**

**New York, New York**

May **14**, 2008

*Peter K. Leisure*
U.S.D.J.